**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT FEIN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **3:24-CV-441** |
| | : | **(JUDGE MARIANI)** |
| **MEDIANEWS GROUP** | : | |
| | : | |
| **Defendant.** | : | |

# **MEMORANDUM OPINION**

## I. INTRODUCTION

Before the Court is Defendant MediaNews Group's Motion for Summary Judgment seeking dismissal of Plaintiff Robert Fein's Complaint in its entirety, with prejudice. (Doc. 28). Fein was terminated by MediaNews Group on September 27, 2023 approximately 26 days after MediaNews Group acquired five Pennsylvania-based news publications previously owned by Times-Shamrock Communications. On March 13, 2024, Plaintiff filed a six (6) count Complaint alleging wrongful termination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 951 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, based on age-related discrimination, religious discrimination, and retaliation. (Doc. 1).

For the reasons that follow, the Court will grant Defendant's Motion in its entirety.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

Prior to September 2023, Plaintiff Robert Fein ("Plaintiff" or "Fein") was employed at Times-Shamrock Communications as the Vice President of Sales. (Doc. 31 ¶ 17). In that role, Fein oversaw the revenue-producing activities for printed newspapers at Times-Shamrock, which included one weekly and four daily Pennsylvania-based publications. (*Id.*)

On or around September 1, 2023, MediaNews Group ("MNG") acquired the aforementioned five print publications from Times-Shamrock Communications. (*Id.* ¶ 6). MNG is a subscriber-focused media company that publishes 77 daily newspapers and more than 150 weekly publications throughout the United States. (*Id.* ¶ 1). MNG hired Plaintiff, along with approximately 250 Times-Shamrock employees at the time of the acquisition, representing substantially all employees who worked for the acquired publications. (*Id.* ¶ 7–8).

Following the acquisition, MNG worked to identify redundancies and operational inefficiencies in an attempt to make the business more profitable. (*Id.* ¶ 25). Shortly after the acquisition, MNG offered a Voluntary Separation Plan ("VSP") to employees who worked for

---

[1] In some instances, Plaintiff partially admits or qualifies his responses. In the Statement of Undisputed Facts, the Court includes those facts which are agreed upon by the parties. In several instances, Plaintiff denies a fact on the basis that "[a]ny characterization of the referenced document is disputed as the document speaks for itself." (*See* Doc. 31 at pp. 5, 10–13). Where the Court has verified that the referenced document does, in fact, demonstrate the fact at issue, the Court accepts the fact as true because the accuracy of the documents' text is not in dispute.

Additionally, the parties provide citations to the record in support of their stated facts which have been verified by the Court, but the Court does not include them in the recitation set out in this Memorandum Opinion.

the newly-acquired publications to consolidate staff. (*Id.* ¶ 28). Plaintiff was aware of the VSP and was eligible to apply for it but did not do so. (*Id.* ¶ 29). Plaintiff further testified that he was aware MNG "had…employees who performed similar [job] functions as [Plaintiff] did," namely one Jim Feher. (*Id.* at ¶ 23; *see also* Doc. 29-5 at 68:15–69:1 (Plaintiff's deposition)). Jim Feher was the VP of Advertising for MNG's Pennsylvania newspaper publications before (and after) the acquisition. (Doc. 31 ¶¶ 23–24).[2]

MNG laid off approximately 51 employees through the VSP. (*Id.* ¶ 31). After the conclusion of the VSP, MediaNews conducted involuntary layoffs. (*Id.* ¶ 32). MNG involuntarily laid off approximately 68 employees, for a total workforce reduction of approximately 119 employees. (*Id.* at ¶¶ 31, 33–34). Plaintiff was involuntarily terminated on September 27, 2023, approximately 26 days after he was hired by MNG through its acquisition of Times-Shamrock's print publications. (*Id.* ¶¶ 35–36).

The decision to terminate Plaintiff was made by one Edward Condra, who was born in 1964. (*Id.* ¶¶ 37–38). According to Condra, Plaintiff's employment was terminated because Plaintiff's position was redundant and unnecessary following the acquisition and was therefore eliminated. (*Id.* ¶ 40). Jim Feher, the individual who performed similar job functions to Plaintiff, was born in 1968. (*Id.* ¶¶ 35–36). Condra testified that the acquisition of Times-Shamrock's print publications was unusual because, out of a desire to maintain confidentiality,

---

[2] Plaintiff disputes the specific number of print publications Feher was responsible for. (*See* Doc. 31 ¶ 44). This is not a genuine dispute of a material fact, as both parties appear to agree that Feher oversaw the revenue-producing activities of at least two dozen publications pre-acquisition. (*See id.* (Plaintiff notes that Feher managed, post-acquisition (i.e. after the addition of 5 publications) 32 publications)).

Times-Shamrock did not provide MNG with a pre-closing due diligence period to evaluate staffing, including to identify potential duplicative roles and determine which employees, if any, would be retained. (*Id.* ¶¶ 9–13).

As part of the post-acquisition process of identifying duplicative roles, Condra held an introductory meeting with MNG's senior-level management, including Plaintiff, on September 1, 2023. (*Id.* ¶¶ 9–13). This was one of three meetings Plaintiff had with Condra. (*Id.* ¶ 20). During Condra and Plaintiff's second in-person meeting, approximately two weeks after the acquisition, Plaintiff testified that Condra made two discriminatory comments.[3] (*Id.* ¶ 50). Condra commented, "that's why you are good at sales, your people are good with money," in reference to Plaintiff being Jewish. (*Id.* ¶ 51, 60). During the same one-on-one meeting, Condra asked Plaintiff how old he was and then commented "well, I guess you will be retiring soon." (*Id.* ¶ 52). Plaintiff was born in 1957. (*Id.* ¶ 55). The third and final time that Plaintiff met with Condra was on September 27, 2023, when Plaintiff's employment was terminated. (*Id.* ¶ 22). Plaintiff testified that he did not recall any further inappropriate comments from Condra during his employment. (*Id.* ¶ 53).

---

[3] Although Defendant disputes that these comments were made, Defendant accepts them as true for purposes of summary judgment. (*See* Doc. 29 at 8).

## III. Standard of Review

Summary judgment "is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## IV. Analysis

### A. Discrimination on the Basis of Age

Plaintiff contends that Defendant discriminated against him because of his age in violation of the ADEA and the PHRA. (*See generally* Doc. 1). With the present motion, Defendant argues Plaintiff's age discrimination claims fail because he cannot establish a *prima facie* case and cannot establish that the reason given by Defendant for terminating him was pretext. (Doc. 29 at 12-25). Plaintiff responds that he can establish both the *prima facie* case and that Defendant's proffered reason for his termination was a pretext for unlawful age discrimination. (Doc. 30 at 7–11). For the reasons discussed below, the Court concludes summary judgment is warranted on Plaintiff's age discrimination claims.

It is well-established that ADEA and PHRA claims are analyzed under the same standard. *See, e.g., Colwell v. Rite Aid Corp.*, 602 F.3d 495, 500 n.3 (3d Cir. 2010). As a result, the Court generally references only the ADEA in this Memorandum, and Counts III and IV will rise or fall together.

The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, terms, conditions, or privileges of employment on the basis of their age. *See* 29 U.S.C. § 623(a)(1). As summarized in *Palmer v. Britton Indus., Inc.*, "[t]he Federal Age Discrimination in Employment Act prohibits employers from taking adverse action against an employee who is at least 40 years old … 'because of such individual's age.'" 2016 WL 11969757, at *2 (3d Cir. Feb. 26, 2025) (not precedential) (citing 29 U.S.C. § 631(a)

and 29 U.S.C. § 623(a)). Plaintiff "ha[s] the burden to show that his 'age was the 'but-for' cause of the employer's adverse action.'" *Id.* (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

Following *Gross*, the Court of Appeals for the Third Circuit confirmed that the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), is used when a plaintiff does not present direct evidence of discrimination. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of showing a *prima facie* case of discrimination. 411 U.S. at 802. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith*, 589 F.3d at 689. "This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (*citing Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)). "At this stage, 'the defendant need not prove that the articulated reason actually motivated its conduct.'" *Id.* (*citing Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)).

Once the defendant offers a legitimate non-discriminatory reason, "the burden of production [shifts] back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for

discrimination." *Burton*, 707 F.3d at 426 (*citing Fuentes v. Perskie*, 32 F.3d 759, 764–65 (3d Cir. 1994)). To survive summary judgment, "the plaintiff must point to some evidence ... from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

**i. <u>Plaintiff has not established a *prima facie* case of age discrimination.</u>**

From the outset, it is not clear that Plaintiff can establish even a *prima facie* case of age discrimination. The Supreme Court has explained "that the *prima facie* case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). This showing "in effect creates a presumption that the employer unlawfully discriminated against the employee," *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Although the *prima facie* burden is not "onerous," *id.* at 253, "there must be at least a logical connection between each element of the *prima facie* case and the illegal discrimination" alleged to warrant this rebuttable presumption. *O'Connor*, 517 U.S. at 311–12. To establish a *prima facie* case of age discrimination, the plaintiff must generally show the following: 1) he is at least forty years old; 2) the defendant took an adverse employment action against him; 3) the plaintiff was qualified for the position in question; and 4) the adverse employment action was under circumstances that gave rise to an inference of discrimination. *Smith*, 589 F.3d at 689. The fourth element can be satisfied by showing that the plaintiff was

replaced by another similarly-situated employee who was "sufficiently younger" so as to support an inference of discriminatory animus, *id.*, or if no replacement occurred, similarly-situated, sufficiently "younger people subsumed his duties." *Torre v. Casio, Inc.*, 42 F.3d 825, 830–31 (3d Cir. 1994).[4] The four elements are flexible, and whether a Plaintiff has established a *prima facie* case "'depends on the circumstances of the case.'" *Id.* (citing *Massarsky v. General Motors Corp.,* 706 F.2d 111, 118 (3d Cir.1983)).

Defendant does not dispute that the first three elements required for a *prima facie* case have been established. Plaintiff was 65 years old (Doc. 31 ¶ 55); he was terminated involuntarily (*id.* ¶¶ 35–36); and he was almost certainly qualified for the position in question because he had previously done the job at Times-Shamrock for years. However, Plaintiff has offered no evidence of direct replacement. Instead, Plaintiff alleges his duties were re-assigned to an employee who was "sufficiently younger" because Feher was 10–11 years younger than Plaintiff at the time of Plaintiff's termination. Plaintiff also notes that his direct reports, two individuals who are approximately 5–6 years younger than Plaintiff, may have subsumed some of Plaintiff's duties. (Doc. 30 at 9; Doc. 31 ¶ 47). Plaintiff encourages the Court to follow *Carter v. Mid-Atlantic Healthcare, LLC*, in which the court found that an employee had established a *prima facie* case by showing *direct replacement* by an employee

[4] Confusingly, Defendant cites *Torre* for the proposition that the retained employees who subsumed Plaintiff's duties must be "persons not in the protected class." (Doc. 29 at 12). *Torre* did not hold as much, and in fact, the *Torre* court found that a 41-year-old employee (i.e. within the same protected class) who subsumed a 59-year-old plaintiff's duties was sufficiently young to establish a *prima facie* case of age discrimination.

who was 4.5 years younger than the *Carter* plaintiff. 228 F. Supp. 3d 495, 502–04 (E.D. Pa. 2017). That fact pattern is simply not what occurred in the present case—no direct replacement occurred. Fein's role was eliminated because it was duplicative of an existing employee's role, and no new "Vice President of Sales" was hired following his termination.

In the absence of direct replacement, this case is not akin to *Carter*; instead, it is more akin to *Torre*, in which an employee's duties were subsumed by retained employees at least *eighteen years younger*. Of course, there is no bright line rule for whether another employee is "sufficiently younger" to support an inference of discrimination. *Steward v. Sears Roebuck & Co.*, 231 Fed.Appx. 201, 209 (3d Cir. 2007) (non-precedential) ("We decline to adopt a brightline rule that a 6.75 year average age difference between a plaintiff and those who assume his job duties is, as a matter of law, insufficient to give rise to an inference of age discrimination"). However, in a reduction in force case, where hundreds of positions were eliminated, an inference of age-based discrimination is naturally weaker than in a scenario in which an employee is individually replaced by a younger person. *See Torre*, 42 F.3d at 831–32 (noting "[t]he inference of age discrimination may not be overpowering," implying relative weakness of inference in a reduction in force case compared to a replacement case). Thus, where no replacement occurred in the first instance, the re-assignment of Plaintiff's duties to employees who are 5–11 years younger (but who are within the same protected class) does not necessarily carry the same inference of discriminatory animus.

In addition to demonstrating that sufficiently younger employees subsumed his duties, Plaintiff must also demonstrate that those employees are "similarly situated" to establish his *prima facie* case of age discrimination. *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 250 (3d Cir. 2002) ("[T]o present a prima facie case raising an inference of age discrimination in a reduction in force situation, the plaintiff must show, as part of the fourth element, that the employer retained someone similarly situated to him who was sufficiently younger."); *see also Torre*, 42 F.3d at 831 ("[W]hen [plaintiff] was terminated in the reduction in force, other *similarly-situated* but younger employers were retained[.] (emphasis added)). A similarly situated employee "does not mean identically situated, [but] the plaintiff must nevertheless be similar in 'all relevant respects.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009) (quoting *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997)). A plaintiff can establish a comparator is similarly situated by "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (citations omitted).

In the present case, Plaintiff does not advance a specific argument that Plaintiff's direct reports are actually similarly situated; instead, he urges the Court to leave this "fact intensive inquiry" for a jury. (*See* Doc. 30 at 8). Conversely, MNG notes that Plaintiff's two direct reports cannot be "similarly situated" because they did not share a supervisor with Plaintiff—their supervisor *was* Plaintiff. (*See* Doc. 29). The Court agrees that Plaintiff's two direct

reports are not similarly situated and are not effective comparators for purposes of establishing a *prima facie* case. Neither was Feher similarly situated to Plaintiff. Feher was *already* employed at MNG prior to the acquisition for approximately five years. (*See* Doc. 29-7 (noting Feher's seven years of employment as of October 2025)). The scope of his job was significantly larger, with Feher overseeing, pre-acquisition, the revenue producing activities of at least two dozen publications in a large geographic region. (*See* Doc. 31 ¶ 44). Plaintiff, on the other hand, managed the revenue producing activities of just five publications. (*See id.* ¶ 17). Defendant further notes that Feher and Fein did not have comparable levels of experience, with Feher bringing "significantly more industry experience." (*See* Doc. 32 at 12). Based upon these distinguishing facts, and particularly the distinct posture of Feher's job (as a 5-year, as opposed to 26-day, employee of MNG), no reasonable jury could find that Feher and Fein were similarly situated—that is, Plaintiff has failed to establish a comparator "without such differentiating or mitigating circumstances as would distinguish … the employer's treatment of them." *Opsatnik*, 335 F. App'x at 222–23. Thus, Plaintiff has not shown that MNG retained any "substantially similar" employee who is sufficiently younger.

Plaintiff has also offered a statement by Condra, the decision-maker who effectuated Plaintiff's termination, as evidence of age discrimination. Condra allegedly stated that he guessed Plaintiff "will be retiring soon." (Doc. 31 ¶ 52). Defendant notes, though, that "[a] passing reference to retirement age and [Plaintiff's] own belief that age discrimination occurred … do not satisfy the fourth element of a *prima facie* case." *Willis v. UPMC Children's*

*Hosp. of Pittsburgh*, 808 F.3d 638, 646 (3d Cir. 2015). The Court agrees. It is fairly routine, especially in passing, to comment on retirement, often in the context of business-planning. *See id.* at 649 ("[I]t is common business practice, and not impermissible discrimination, for an employer to inquire about retirement plans in anticipation of staffing needs.").

Although the burden for establishing a *prima facie* case is "not onerous," there must be "adequate [evidence] to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor*, 517 U.S. at 312. And while the Court looks at the whole record to adduce this evidence, "[w]here the plaintiff is not directly replaced," Plaintiff must show "facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Willis*, 808 F.3d at 644 (3d Cir. 2015). Plaintiff has not identified substantially similar, sufficiently younger comparators who were retained. Even if the identified comparators, namely Feher, were substantially similar, the mere fact that they are younger does not automatically establish a *prima facie* case. In the context of an acquisition, when Plaintiff was employed for just 26-days while MNG consolidated staff, the Court finds that a jury could not reasonably infer that impermissible animus was at play.[5] Defendant is therefore entitled to summary judgment on Plaintiff's claims alleging age discrimination (Counts III and IV).

[5] Plaintiff correctly notes that at the summary judgment stage, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (Doc. 30 at 2–3 (citing *Tolan v. Cotton*, 572 U.S. 650, 651 (2014)). However, as previously stated, there simply is not sufficient, unexplained evidence to permit the Court to draw a *justifiable* inference in Plaintiff's favor.

### ii. Plaintiff cannot show MNG's justification for terminating him was pretextual.

Even assuming, *arguendo*, that Plaintiff had established a *prima facie* case, Plaintiff has certainly not carried his burden of showing that Defendant's stated justification for terminating him was pretextual.

Under the *McDonnell Douglas* framework, once Plaintiff has established a *prima facie* case (and he has not), the Defendant must "identify a legitimate non-discriminatory reason for the adverse employment action." *Smith*, 589 F.3d at 689. The record is replete with evidence, including Plaintiff's own testimony, that a reduction in workforce occurred after MNG's acquisition of the five publications from Times Shamrock. (*See* Doc. 31 ¶ 34; *see also* Doc. 29-5 at 68:15–69:1 (Plaintiff testifies that Feher "performed similar [job] functions as [he] did.")). MNG first offered employees a Voluntary Separation Plan, then involuntarily terminated not just Plaintiff, but dozens of employees when there was insufficient interest in voluntary separation. Condra testified that the reduction was motivated by MNG's desire to consolidate duplicative positions in order to lower expenses and increase profitability. (Doc. 31 ¶ 49). Defendant has carried its "relatively light" burden to "permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton v. Teleflex Inc.*, 707 F.3d at 426.

For the avoidance of any doubt, the Court will analyze whether Plaintiff could show that MNG's non-discriminatory justification for terminating Fein is pretextual. To discredit MNG's proffered justification for Plaintiff's termination, Plaintiff "must demonstrate such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Fuentes*, 32 F.3d at 765 (citation omitted, emphasis in original).

Plaintiff argues that there are credibility issues as to MNG's non-discriminatory justification for terminating Fein because of the comment Condra made that Plaintiff "will be retiring soon." (Doc. 30 at 11). But there is no credibility issue at play here. Defendant has accepted, for purposes of summary judgment, that Condra made that statement. But Condra's solitary statement does not show discriminatory animus, and it certainly is not significant enough (particularly by itself) to permit a jury to disbelieve MNG's justification for terminating Plaintiff. Moreover, there are no incoherencies or inconsistencies in MNG's reduction in workforce. The undisputed record demonstrates that MNG acquired 250 employees (many of whom were redundant); MNG was unable to assess staffing needs during pre-acquisition due diligence; MNG offered a VSP; and MNG involuntarily terminated employees when the VSP did not sufficiently reduce MNG's newly-acquired workforce. (Doc. 31 ¶¶ 6–13; 25–35). There are no incoherencies in this sequence of events.

At oral argument, Plaintiff raised a further credibility argument as to the decision-maker, Condra. Plaintiff argued that Condra may not have been the sole decision-maker in terminating Plaintiff and may have had input from Feher (the individual who primarily

subsumed Plaintiff's job duties). This sort of credibility question is not adequate to allow a jury to find Plaintiff's termination based on redundancy was pretextual. Indeed, even if Feher did have some input into the process of consolidating employees post-acquisition, that does not show a contradiction in MNG's proffered justification for terminating Plaintiff, nor does it have any connection to an allegation of age-discrimination. This credibility issue is precisely the sort of immaterial factual dispute that is irrelevant to the outcome of a court's summary judgment decision.

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The record before the Court indicates that there is not sufficient evidence to establish a *prima facie* case of age discrimination. Even assuming that Plaintiff's evidence were sufficient to permit a jury to infer age played an impermissible role in Plaintiff's termination, Plaintiff has not advanced evidence to cast doubt on the legitimacy of MNG's reason for terminating him. Because Plaintiff cannot prevail in showing Defendant's non-discriminatory basis for terminating him was pretextual, Defendant is further entitled to summary judgment as to Counts III and IV.

**B. <u>Discrimination on the Basis of Religion</u>**

Plaintiff further alleges that MNG improperly discharged him based on his religious identity as a Jewish man in violation of Title VII and the PHRA. Like Plaintiff's claim alleging age discrimination, a claim alleging religious discrimination is analyzed under the *McDonnell*

*Douglas* framework: to establish his *prima facie* case, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for an employment position; (3) and he was discharged from that position; (4) under circumstances that give rise to an inference of unlawful discrimination. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1066 (3d Cir. 1996)).

Defendant does not dispute that Plaintiff satisfies the first three elements—he is Jewish, and thus a member of a protected class (Doc. 31 ¶ 60); he was qualified, as articulated above (*supra* Section IV(A)(i)); and he was discharged from his position at MNG (Doc. 31 ¶ 35).

On the fourth element, though, Plaintiff has failed to establish circumstances permitting a jury to infer religious discrimination occurred. Plaintiff has testified that Condra stated, "that's why you are good at sales, your people are good with money," in reference to Plaintiff being Jewish. (Doc. 31 ¶ 51, 60). This statement is indisputably based on stereotyping and is patently unacceptable in any professional setting. Nonetheless, "there must be at least a logical connection between each element of the *prima facie* case and the illegal discrimination" alleged. *O'Connor*, 517 U.S. at 311–12. Here, there is simply no nexus between Condra's alleged comment and Plaintiff's termination. To the contrary, Condra's comment (while offensive) is incongruous with terminating Plaintiff. Condra's comment was that Fein is "good at sales." Insofar as this comment relied on prejudicial stereotyping, it would be nonetheless a reason to *retain* Plaintiff, not terminate him. Condra acknowledged

that Fein was, in fact, "good at sales." That statement of Plaintiff's good sales performance does not create a dispute of fact as to the presence of discriminatory animus. Condra's opinion that Fein's people "are good with money", premised as it is on a ethnic/religious stereotype, does not present a scintilla of evidence that the decision to terminate Fein had anything to do with Plaintiff's religion or ethnicity. Given that there is no other evidence in the record of religious animus or even stereotyping, Plaintiff has failed to articulate any basis for a jury to logically connect Condra's tone-deaf compliment to Plaintiff's discharge. *See Burgess v. Dollar Tree Stores, Inc.*, 2015 WL 463936, at *4 (E.D. Pa. Feb. 4, 2015), *aff'd*, 642 F. App'x 152 (3d Cir. 2016) (noting, in analyzing *prima facie* case for retaliation, that "'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' will not violate Title VII" (citing *District v. Breeden*, 532 U.S. 268, 271 (2001))). For the reasons herein, the Court must grant summary judgment to Defendant on Counts I and II of Plaintiff's Complaint.

**C. <u>Retaliation</u>**

Plaintiff initially brought claims alleging his involuntary termination was the result of retaliation for protected conduct, namely opposition to age-discriminatory employment practices. (*See* Doc. 1 at 7–8 (Counts V and VI)). However, Plaintiff concedes that discovery has not borne out any basis for his retaliation claims because he first engaged in opposition conduct *after* being informed of his termination. (*See* Doc. 30 at p. 2, n. 1 ("Plaintiff does not oppose...Summary Judgment as to...Counts V and VI"); *see also* Doc. 30-1 (Plaintiff's proposed order (dismissing claims with prejudice))). Accordingly, the Court will grant

Defendant's motion for summary judgment as to Counts V and VI as there is no factual basis for pre-termination opposition conduct in the record and thus the claims fail as a matter of law. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997) (noting that Plaintiff must establish that protected activity occurred before or contemporaneous with adverse employment action).

## V. Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. 28) will be granted in its entirety. A separate Order will follow.

Robert D. Mariani
United States District Judge